UNITED STATES DISTRICT COURT,
SOUTHERN DISTRICT OF NEW YORK,
CIVIL DIVISION

—————————————————————X

ANDREW PERDIGON

                                      Plaintiff,

       v.

UNITED STATES,
MERRICK GARLAND, U.S. ATTORNEY GENERAL,
LETICIA JAMES, N.Y.S. ATTORNEY GENERAL,
UNKNOWN NYPD OFFICERS FROM THREE (3)
     RAIDS ON PLAINTIFF'S HOME,
APPLE INC.,
44TH STREET DEVELOPMENT LLC,
GOTHAM WEST AFFORDABLE LLC,
GOTHAM ORGANIZATION INC.,
LENOX HILL RADIOLOGY,
AUDREY PERDIGON MAHONEY, ORLANDO
PERDIGON, GABRIEL CALDERON, JORGE
LUIS CALDERON, ORLANDO F PERDIGON,
ADRIANA CALDERON, LILIA CALDERON,
CHRISTOPHER SCHRIER,
EDWIN FIGUEROA, VINCENT GUIDA, BRAD
DILLON-COFFMAN, STEPHEN R. HUNTER,
AMY PINSKY, BRENDAN M. MACFADGEN,
ZAIDA E. PERDIGON, And
UNKNOWN CO-CONSPIRATORS,

                         Defendants.

—————————————————————X

RECEIVED
SDNY PRO SE OFFICE
2023 MAR -2  AM 11: 27

INDEX NO. _23-cv-1828_____

COMPLAINT

PLAINTIFF Andrew Perdigon, proceeding *pro se*, brings forth this COMPLAINT for the deprivation of his rights and for civil actions against violations of the following federal, state and local laws, making these claims upon information and belief:  Federal Racketeering and Corrupt Organizations Act (18 U.S.C. §1962 *et seq*), Organized Crime Control Act (N.Y.S. Pen §460.20 *et seq*), deprivation of rights under color of law (18 U.S.C. §242), conspiracy to interfere with civil rights (42 U.S.C. §1985),  deprivation of relief benefits (18 U.S.C. §246), forced labor (18 U.S.C. §1589), stalking (18 U.S.C. §2261A(2)), use of radiological dispersal device (18 U.S.C. §2332h), hate crimes (18 U.S.C. §249), use of torture (18 U.S.C. §2340A *et seq*), computer related fraud (18 U.S.C. §1030), fraud and swindles (18 U.S.C. §1341), fraud by radio, wire, or T.V. (18 U.S.C. §1343), abuse of process (18 U.S.C. §1589), exemption of human subjects in research (16 U.S.C. §1028), identity fraud (18 U.S.C. §1028), fraud using access devices (18 U.S.C. §1029), by defendants

1     510 West 45th Street, apt 10G
      New York, NY 10036

Andrew Perdigon | (917) 916-4456
andrewperdigon@outlook.com



the UNITED STATES, MERRICK GARLAND, U.S. ATTORNEY GENERAL, LETICIA JAMES, N.Y.S. ATTORNEY GENERAL, UNKNOWN NYPD OFFICERS FROM THREE (3) RAIDS ON PLAINTIFF'S HOME, the STATE OF NEW JERSEY, APPLE INC., GOTHAM ORGANIZATION INC., 44TH STREET DEVELOPMENT LLC, GOTHAM WEST AFFORDABLE LLC, LENOX HILL RADIOLOGY, UNKNOWN CO-CONSPIRATORS, AUDREY PERDIGON MAHONEY[1], ORLANDO PERDIGON, GABRIEL CALDERON, JORGE L. CALDERON, ORLANDO F PERDIGON, ADRIANA CALDERON, LILIA CALDERON, CHRISTOPHER FIGUEROA SCHRIER, EDWIN FIGUEROA SCHRIER, VINCENT GUIDA, BRAD DILLON-COFFMAN, STEPHEN R. HUNTER, AMY PINSKY, BRENDAN M. MACFADGEN, ZAIDA E. PERDIGON,.

      1.      **NATURE OF THE CASE, DECLARATORY RELIEF, EMERGENCY MEASURES:** The Plaintiff alleges that whereby the defendants have already enjoined themselves in a criminal enterprise that is known publicly yet has been concealed from the Plaintiff, they are in violation of federal, state, and local laws and have materially and negatively impacted his life. Where there is otherwise no significant source of wealth associated with the Plaintiff, those involved in racketeering activities and organized crime have focused on a phenomenon that is of the Plaintiff, described herein as telepathy. It is circumstantially known to the Plaintiff, because of his telepathy, that a local celebrity has grown and that his ability has yielded biological data of immense value that is tied to his person through copyrights, which he has been deprived of at great effort to the defendants. Thus, the Plaintiff is seeking an injunction on the use of technology and moves the Court for declaratory relief regarding control of the technology used to access his brain, a veritable biological computer capable of deciphering radio frequencies into speech, and discovery of his copyright biological data from the defendants. Furthermore, upon there being civil violations of the Federal Racketeering and Corrupt Organizations Act (R.I.C.O.) (18 U.S.C. §1962 *et seq*), and Organized Crime Control Act (O.C.C.A.) (N.Y.S. Pen §460.20 *et seq*), fraud, conspiracy to commit fraud, and pressures being applied on multiple fronts by the defendants, including eviction from his apartment, the Plaintiff moves the Court to issue a gag order and injunction on all defendants, regarding his intellectual property and preventing discussions on the case. The Plaintiff is in need of the invaluable information needed to secure himself and his brain from intrusion from others, which he might have been given prior to these proceedings taking place had there been concern for his well-being. The Plaintiff also asks the court for these proceedings be sealed from the public, given potential discussions of his intellectual property, and potential discussions on the mechanics of technology-assisted telepathy. The

---

[1] Defendants named from Audrey Perdigon Mahoney onward are named herein collectively as the "Circle", daily operators of telepathic technologies.

510 West 45th Street, apt 10G
New York, NY 10036

Andrew Perdigon | (917) 916-4456
andrewperdigon@outlook.com

Plaintiff also moves the Court to place a freeze on assets and travel for the defendants who are indicated as having connected to him daily using the aforementioned technology given they are a small circle of offenders involved in daily human rights violations, and given they pose a flight risk and significant harm to the Plaintiff if they disseminate information regarding him which they have been privy to.

2.      There are federal questions involving the violation of the Plaintiff's freedom of thought which has resulted in *injury in fact*, the decision of the federal government to forgo prosecuting its own citizens and residents who do not comport with the law, en masse, and where the government and its agents take liberties in violation of the Plaintiff's zone of privacy, purporting public interest far beyond its scope and endangering the life of the Plaintiff, where a determination of public interest consider should have begged the question as to where the Plaintiff's personal rights, freedoms first, and interest in sharing his gift stood first. Since learning of his telepathy, there has been a desire to cooperatively discuss his telepathy, the use of his data given its potential to further science and technology, and publication of his original works so that he viewed properly now and in years to come, instead of with a false lens that the defendants, specifically the "Circle," conjure themselves or at the behest of the government and/or corporations to encourage him commit suicide. It is plain to see that the interest of the public extends far beyond the current moment, and consideration for the longevity of humankind can be seen as directly related to the Plaintiff's longevity, in order to benefit from his biological data while respecting his right to life, liberty and property. There is also the question of how to remedy the depth of abuses by the defendants and their agents against the Plaintiff, including equitable relief and declaratory relief in favor of the Plaintiff pursuant to the Constitution, statutory laws, ethical guidelines, considering any specific legal gaps given the circumstances, and considering the full scope of his being exploited for intellectual property. The country might also be bruised from such blatant side-stepping of laws by those who create and/or enforce them, and from facing the reality of the Plaintiff having been effectively enslaved, who does not wish to be implicated as the victim in the reinstitution of slavery, given he has explicitly be deemed as such by the Circle of defendants, believed to be speaking on behalf of all defendants aware of the circumstances at issue.

3.      "The deterioration of a government begins almost always by the decay of its principles." There has been a universal shift in how the Plaintiff is regarded as a citizen in these United States, especially within his home, New York City. Government has ceased paying mind to his concerns, he has reached out ad nauseum with little success at grabbing anyone's attention of late. Law-enforcement has

Andrew Perdigon | (917) 916-4456
andrewperdigon@outlook.com



bullied him and broken in the door to his home, exerting excessive force with manufactured cause and without a warrant, even while privy to the fact that he was the subject of human experimentation and torture. The Plaintiff has been hospitalized and assaulted by doctors who unnecessarily restrained and sedated him. He has been treated with bias by a judge during a preliminary court hearing regarding his housing and was deceived by attorneys representing him. He has been threatened with homelessness by the defendant, Gotham West Affordable LLC, the same whose agents/employees participated in the looting of his home. He's been relegated for years to a life of torment, left to stand alone against the defendants for his right to be treated equally and to establish a proper legacy that is truthfully representative of him. Religious tones have been ascribed to the Plaintiff, deeming him a savior given his telepathy, which was known to others before him and which has been kept a secret for years, forcing him through a nonsensical condemnation, crucifixion, and effective multi-year sentence of isolation without being charged for any crime and having denied him due process. The Plaintiff feels and has been told that the attributes which make him unique, described to the extent the Plaintiff is capable of given limited knowledge, means he is a Messiah and that his current troubles are what a martyr must suffer, "work" that needs to be completed to earn his rights, including to benefit from his own intellectual property. The Plaintiff, even with limited knowledge, can see that he would be a much potent savior if afforded his right to live a long and happy life, as anyone should be able to.

4.    **JURISDICTION** is properly vested in this Court over causes of action arising under the U.S. Constitution, exclusive jurisdiction for civil actions on claims against the United States, for money damages, for injury or loss of property caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, pursuant to 28 U.S.C. §1331 and 28 U.S.C. §1346(b)(1), for actual damages and profits and statutory damages, for impounding and disposition of infringing articles, and costs and attorney's fees for the liability of anyone for infringement of copyright, pursuant to 17 U.S.C. §501 *et seq*, for any civil action arising under any Act of Congress relating to patents, copyrights, trademarks, and any civil action asserting a claim of unfair competition when joined with a substantial and related claim under the copyright, such as is made herein, pursuant to 28 U.S.C. §1338. The Court has authority to grant declaratory relief pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201 *et seq*. The Court has authority to award costs and attorneys' fees under 28 U.S.C. § 2412. Under 42 U.S.C. §1983, the Court has jurisdiction over hearing claims against state and local officials for the "deprivation of any rights, privileges, or immunities secured by the Constitution and [federal laws]." The court also has jurisdiction over claims against the City of New York

Andrew Perdigon | (917) 916-4456
andrewperdigon@outlook.com



per Local Laws, brought forth by the Plaintiff and which would grant him legal and equitable relief for the deprivation of rights created therein of the Plaintiff, pursuant, but not limited, to Local Law 48, N.Y.C. §8-803(b), et seq 2021. The Court also has jurisdiction to prevent and restrain violations of R.I.C.O. and O.C.C.A. and provide relief under 18 U.S.C. §1964 and N.Y.S. Pen §460.70 respectively.

5.      **PARTIES:**  United States, a defendant herein referenced as "U.S.", is comprised of the federal government's agencies, departments, offices. Its officials, officers, employees and/or agents, from any of its divisions from which the participation originated can be taken from each refernce.

6.      APPLE INC., a defendant named herein as "Apple", headquartered at 1 Apple Park Way, Cupertino, CA 95014, is the manufacturer of iPhones the Plaintiff currently uses for two (2) mobile service numbers through Verizon Communications, Inc., one (1) as a spare device, a Macbook Air for general use, and an iPad as a backup for files with it being Wi-Fi enabled only. Apple has been the primary brand for mobile phone services used by the Plaintiff since 2008 and is believed to be involved in the aggressive hacking of his devices since then, with there being overwhelming evidence of his devices being compromised for several years, and other indications that the current hacking ties back to events around the same time.

7.      Apple is thought to be involved in the employment of agents who are also working in the interest of the defendants, thus making the firm a co-conspirator in a criminal enterprise involved in diversified criminal conduct. It is a fact that these agents wield spyware and other cybercrime-enabled applications to poach the Plaintiff's data, compromise his networking devices, control/disable his home security devices, sabotage his ability to perform work, including this court document, and his collection of data and evidence for court challenges which are at risk of being deleted. In addition, the Plaintiff's intellectual property is used by Apple to further their content and product offering, including data that is described herein as biological data, which has come at a tremendous human cost without the Plaintiff being compensated, credited, or acknowledged in any way.

8.      Leticia James, Attorney General of the State of New York and a defendant herein, has an office at Office of the Attorney General, 28 Liberty Street, New York, NY 10005, and through her own and the her office's negligence, the Plaintiff has suffered many injustices which have been frequently reported, to the Attorney General's office and to state regulators such as the N.Y.S. Division of Human Rights, which are now being brought forward in these proceedings as violations of state and local laws through which

Andrew Perdigon | (917) 916-4456
andrewperdigon@outlook.com



injustices could have been curbed, offering the Plaintiff much needed relief. Despite his many attempts seeking aid and there being an acknowledgement in August 2022 stating the Plaintiff "needed to wait," the Plaintiff continues to stand up on his own, daily, amounting to a deprivation of his rights, to equality, among other rights.

9.     Merrick Garland, the U.S. Attorney General of the Department of Justice ("D.O.J.") and a defendant herein, has an office at U.S. Department of Justice, 950 Pennsylvania Avenue, NW Washington, DC, and through his own and the D.O.J.'s negligence, the Plaintiff has suffered highly visible injustices and crimes which are now being brought to the Court, some as federal questions given the government's refusal take a stance under existing laws, though which the Plaintiff believes sufficient laws exist to curb illegal behaviors and provide the Plaintiff the relief he seeks. Despite many attempts to seek help from the D.O.J. and the U.S. Attorney himself, and through outreach to the Federal Bureau of Investigation, the Plaintiff has been unsuccessful in petitioning the U.S. Attorney, thought to be because it would call attention to the enormity of  crimes committed against the Plaintiff, including by the U.S. government, resulting in tremendous pain, suffering, and deprivation rights and freedoms, including but not limited to the right to privacy, equal treatment, and copyrights, and freedom from illegal seizure of his person, his property, his home and his papers, from cruel and unusual treatment, as well as the right to information and freedom of thought, under the 1st and 9th Amendments, which grant rights to citizens beyond those enumerated within the Constitution itself.

10.     44th Street Development LLC and Gotham West Affordable LLC, defendants collectively named herein as "Landlords," are a New York domestic limited liability company and foreign limited liability company formed organized under the laws of the state of Delaware respectively. Per a signed lease agreement entered into on March 17, 2022, the Plaintiff is the tenant of 510 West 45th Street, apt 10G, New York, NY 10036. They have a shared business address at 432 Park Avenue South, New York, NY 10016. Both firms are related entities of Gotham Organization, Inc. These defendants have deprived the Plaintiff of his tenant right guaranteed by N.Y.S. laws, which Landlords have an obligation to secure to those within their properties. There has been a great deal of harm done in violating these and other rights, which the Plaintiff has seen as threatening his life, his home, and which target his property and the work he has done in preparation for his day in court where the contents of this complaint would be brought to light, as would supporting evidence and testimony; these threats are a component of the diversified act of the criminal enterprise seeking defraud him.

6     510 West 45th Street, apt 10G
      New York, NY 10036

Andrew Perdigon | (917) 916-4456
andrewperdigon@outlook.com



11.     Gotham Organization Inc., a defendant herein named "Gotham Org," is a related entity to the aforementioned Landlords of the premises in which the Plaintiff lives, sharing the same business address as them, which some of the agents and employees of the Landlords also do work for directly. The Plaintiff believes there is a great deal of organization between Gotham Org and the other defendants, and their agents, to disrupt him and his acquiring knowledge of his telepathy and intellectual property, to deprive him of his rights so that others can profit from their exploitation.

12.     Unknown N.Y.P.D. Officers from three (3) raids on the Plaintiff's home refers to the many officers, which numbered no less than fifteen (15) on each occasion and is thought to be upwards of twenty-five (25) on any given occurrence. These officers would make absolute demands that mandated compliance in allowing them entry, and excessive force in breaking in the door, when entering with weapons drawn, and in restraining the plaintiff.

13.     Lenox Hill Radiology & Medical Imaging Assoc, P.C., LENOX HILL RADIOLOGY, a defendant named herein as "L.H.R.", has a place of business at 5 Columbus Circle, New York, NY 10019. L.H.R. is in the business of providing medical imaging exams which provided magnetic resonance imagining for the Plaintiff on August 29, 2022. Subsequent to the exam, upon which only partial results were provided, subsequent conversations were had with the Office Manager named Krystal, who is suspected to be part of the criminal enterprise's activities, in order that the Plaintiff obtain the remainder of his results. Also thought to be involved is Maureen Barry, M.D., the Radiologist who provided the report on his results though whom the Plaintiff never met.

14.     Audrey Perdigon Mahoney, born 1981, is sister of the Plaintiff and lives in West Orange, New Jersey. She and the Plaintiff last saw each other in approximately June 2022, when she returned a Verizon internet router that had been stolen from the Plaintiff's home, suspected by gaining illegal access to his apartment. She is part of the group that operates telepathic technology, as well as spyware used to hack the Plaintiff's devices.

15.     Orlando Perdigon, nicknamed Landy, born 1982, is the brother of the Plaintiff and resides in East Rutherford, New Jersey. He is part of the group that operates telepathic technology, as well as spyware used to hack the Plaintiff's devices.

Andrew Perdigon | (917) 916-4456
andrewperdigon@outlook.com



16.    Gabriel Calderon, nicknamed Gabe, born 1985, is believed to reside in Harrison, New Jersey, though public records of him and his family appear altered intentionally to conceal associations; he is a cousin of the Plaintiff. He is part of the group that operates telepathic technology, as well as spyware used to hack the Plaintiff's devices. Gabriel had shared information telepathically that references back to childhood and early adult memories that made it apparent to the Plaintiff that the telepath was in fact real and not a hallucination as it was made to seem for many years.

17.    Jorge L. Calderon, born 1984, is believed to reside in Belleville, New Jersey, and he is a cousin of the Plaintiff. He is part of the group that operates telepathic technology, as well as spyware used to hack the Plaintiff's devices.

18.    Orlando F. Perdigon, born 1954, resides in Marathon, Florida, and he is the father of the Plaintiff. He is part of the group that communicates via telepathic technology. Orlando is known to have been embarked on a campaign to spread information regarding the Plaintiff, with a pattern of activity tracing back to 2010, approximately when the Plaintiff first had telepathic episodes.

19.    Adriana N. Calderon, born 1991, is believed to reside in Belleville, New Jersey, and is a cousin of the Plaintiff. She is part of the group that operates telepathic technology, as well as spyware used to hack the Plaintiff's devices.

20.    Lilia Calderon, born around 1958, is believed to reside in Kearny, New Jersey, and is an aunt of the Plaintiff. She is part of the group that operates telepathic technology, as well as spyware used to hack the Plaintiff's devices.

21.    Zaida E. Perdigon, born 1955, resides in Marathon, Florida, and she is the mother of the Plaintiff. She is part of the group that communicates via telepathic technology. Zaida raised the Plaintiff as a Jehovah's witness until around the age of 15.

22.    Christopher M. Schrier, believed to reside in New York, New York, and is a former Program Manager, is the former best friend and next-door neighbor of the Plaintiff. He is part of the group that operates telepathic technology, as well as spyware used to hack the Plaintiff's devices.

23.    Edwin L. Figueroa, believed to reside in New York, New York, and a former employee of Deloitte, is also believed to still be the husband of the Plaintiff's best friend and next-door neighbor of

Andrew Perdigon | (917) 916-4456
andrewperdigon@outlook.com



the Plaintiff though public records of him appear altered or removed. He is part of the group that operates telepathic technology, as well as spyware used to hack the Plaintiff's devices.

24.     Vincent Guida, believed to reside in New York, New York, working as a nurse, is a former best friend and area neighbor of the Plaintiff. He is part of the group that operates telepathic technology, as well as spyware used to hack the Plaintiff's devices.

25.     Brad Dillon-Coffman, believed to reside in New York, New York, and a Trusts & Estates attorney, is a former friend of the Plaintiff. He is part of the group that operates telepathic technology, as well as spyware used to hack the Plaintiff's devices.

26.     Stephen Roe Hunter, believed to reside in Newburgh, New York, is a Human Resources executive with Viacom and former ex-boyfriend of the Plaintiff. He is part of the group that operates telepathic technology, as well as spyware used to hack the Plaintiff's devices.

27.     Brendan M. MacFadgen, believed to reside in New York, New York, is a veterinarian and former ex-boyfriend of the Plaintiff. He is believed to have been using an alias since moving to New York in 2021. He is part of the group that has spoken to the plaintiff using the telepathic technology and has been in league with others in the same group.

28.     Amy Pinsky, believed to reside in Astoria, New York, and a former Chief of Staff used to also be a best friend of the Plaintiff. She is part of the group that operates telepathic technology, as well as spyware used to hack the Plaintiff's devices.

29.     **BACKGROUND and DEFINITIONS:**    Starting sixteen (16) years ago, the Plaintiff experienced and since has come to terms with the fact that he is a telepathic human being, capable of broadcasting his thoughts exceptionally, via electronic brain signal transmissions ("brainwaves") in a way that can be transmitted and received over great distances, received and synthesized by brain-to-computer interfaces ("B.C.I.") and other applications which allow those operating requisite technology, and any audience they redistribute it to, to hear and/or read the Plaintiff's discrete thoughts as words, a form of technology assisted telepathy. In essence, the Plaintiff's brain and/or mind is connected to electronic communication channels and/or the internet, across borders and stimulating commerce, using technologies that have been developed and trained for this use from what is otherwise a radio frequency signal. The Plaintiff has not confirmed the existence of any implants within his body, despite trying to do

Andrew Perdigon | (917) 916-4456
andrewperdigon@outlook.com



so with medical professions, nor has not undergone any brain surgeries to implant any such device, however he is seeking information on all things related to his technology-enabled telepathy via these proceedings, by Court order if necessary. The Plaintiff's brain is also capable of receiving what he describes as "silent" speech or sounds, transmissions audible within his mind, which he is unable to cease at will and which he believes are affixed to radio frequencies (RF) his brain is capable of receiving – all together this two-way channel is considered "telepathy". These transmissions make fluid conversation between the Plaintiff and others who are equipped with and/or operating the requisite technologies; for his own part, the Plaintiff is able to communicate using only his thoughts, along with verbal expressions, in these communications. Also possible, known to the Plaintiff given frequent interactions, is the receipt by others of transmissions of other data and/or output from the Plaintiff's body and/or mind, the data of immense value referenced, that contains information on biological processes and cognitive expressions from the Plaintiff and/or his consciousness(es), psyche, mind, and the like, by those with requisite technologies.

30.     During a period of heuristically learning about his ability while it was being kept a secret by others, the Plaintiff published a journal piece contemplating his identity given this new light, a consideration proving prescient given these proceedings, as he sought to register copyright of a personal work that would synchronize with any transcript of his thoughts. He also is aware that others have disregarded his person in pursuit of a connection with the mind/consciousness, thus writings on identity might clarify and improve his situation. The disconnect, in reality, is separated by a thin veil representing the lack of acknowledgement of the Plaintiff's telepathy, is a barrier both sides can see through yet which only the Plaintiff has a desire to pull back, which has rendered the Plaintiff ignorant and ostracized by society, resulting in bias, prejudice, and exploitation by the defendants and their agents, of data from the Plaintiff, from his person, including his consciousnesses and any other manifestations of him, which others have compiled data on. To his belief, this is done conveniently for others seeking to prevent their being held accountable for the crimes described herein, in breach of ethical boundaries that can be inferred with common sense and including the infringement of the Plaintiff's intellectual property rights.

31.     The set of individuals that communicate to/with the Plaintiff in a two-way telepathic channel, some of which are defendants herein, have been the same individuals the Plaintiff was once close friends with or close family to, who are now estranged, referenced herein as the Circle. Each individual within the Circle is an agent of the defendants and co-conspirator, and these individuals would know, with certainty, how to access the requisite transmission methods and encrypted and/or proprietary

Andrew Perdigon | (917) 916-4456
andrewperdigon@outlook.com 

technologies and applications they are using and misusing, at the very least, the behest and/or direction of government agencies, officials, officers, or other agents of the criminal enterprise.

32.     The Circle is staffed by multiple individuals at all hours of the day, every day, yet their presence and effects are pronounced when he is at home given objects hidden throughout the apartment, a public announcement system that is be surrounding and directed at the Plaintiff's apartment coming from upwards of approximately half a mile away, or ten (10) New York City blocks. One of these public announcement speakers is also known to be located or it was located, prior to his realizing where it was, within the awning of his building. The Circle also has or had, and was likely granted, control over the systems of the building where the Plaintiff lives, including access to the front door, access to the security system, and access to the Plaintiff's apartment via the Landlord illegally granting them access or by giving agents part of the Circle a key. Separate litigation is underway in housing court, as the Landlord of the property initiated eviction proceedings after years of harassment, working with members of the Circle to coordinate their harassment, and upon the Plaintiff becoming aware of radiological dispersal objects installed throughout the apartment walls which have been used for years to sew chaos.

33.     Also of consequence are the capabilities of the Circle to operate RF technology to induce pain and/or sensations on or inside my body, per incoming telepathic connections and/or per transmissions to/activation of objects implanted in my body that when triggered, react in a way that causes a localized, sharp pain, a burning sensation, pressure where the tissue surrounding such an implant becomes inflamed, disorientation, vertigo, intestinal pain and discomfort. The Circle's use of these technologies to disrupt the Plaintiff's work, even on these court documents, is collaborative and to meant induce terror, given their own discomfort with being outed, on the record, for their actions. It has prevented the Plaintiff's ability to seek relief in a timely manner and is in conjunction with their ability to induce electromagnetic radiation, which has short and long-term damage and effects. The Circle operates in such a way that their harming the Plaintiff is used as entertainment, for public display at time as well. They spew hate remarks such as "trans people are disgusting," referring to the Transhuman movement as it was said during a period of exploration when the Plaintiff felt it described my experience, in part, and his unique characteristics. The Plaintiff has been called a "faggot" via the telepathic channel; the presence of others intrusion into every last detail of his life, and particularly at times when commentary was simple a barrage of insulting remarks injected directly into his mind has been called "mental rape", given their communication to him is established even when he's asleep, and they are attentive, monitoring him even at the very moment he wakes up each day. The Circle criticizes the Plaintiff's every move and decision, via

Andrew Perdigon | (917) 916-4456
andrewperdigon@outlook.com



the telepathic connection. They also mocked him by using an ex-boyfriend, Brendan M. MacFadgen, VMD (he is thought to have changed his name), who in-person would recount the things the Plaintiff had just suffered through as his own experience. The Plaintiff finally became aware that Brendan was performing for the benefit of an audience and was also attempting to enjoin himself in these proceedings as being telepathic himself, the notion itself being a mockery as he had contributed to the suffering. At times the Brendan would smirk after hearing the Plaintiff talk about his troubles, after which Brendan would further cause chaotic moments to destabilize the Plaintiff and prepare for more problems to ensue. Brendan is believed to be one of the masked voices on the telepathic channel. Regarding those who are the Plaintiff's family members, they would frequently make disparaging comments about current and past events that link experiences from childhood to now, which acknowledges a "secret" about the Plaintiff, which has been kept from him since early childhood, something they knew about long ago, a distinguishing characteristic donning the Plaintiff a savior, stated as if they are envious or hateful of him because of it. The assault on him has been multiprong and multiphasic, across a great many years and using psychological torture and physical torture that has left scars.

34.    "Biological data" is used to reference the Plaintiff's brain, mind, body, or other biological data (i.e., formulated streams of thought, internal dialogue, mental constructs, internal communications), each having a distinct expression via brainwaves or through other electronic transmissions, received as words, numbers, sounds, and/or data, thought to be similar to how a radio receives audio, and/or other data resulting from a biological process that has been transmitted electronically (i.e., cognitive, autonomous, and/or per an expression of the body).

35.    An "alt" persona has been used to misrepresent the Plaintiff by those looking to conceal where they've published his personally identifying information, a practice known to the internet community as "doxxing". Data that is stolen using spyware from the Plaintiff's devices is thought to be married to that which is captured via other methods of hacking, including his mind, together serving a multitude of purposes of immense value to spur economic and social benefits and for use in affecting, either in part or as a whole, the price of Bitcoin. The Plaintiff, years ago and prior to confirming his telepathy, noticed a correlation between the price of Bitcoin and his life's events which has since been circumstantially tested and confirmed, especially though during 2022, given both the decrease of Bitcoin's price by approximately 75% parallel to the series of unfortunate events in the Plaintiff's life described herein. Another purpose of the alt persona is suspected to be for targeting the Plaintiff socially, revealing

Andrew Perdigon | (917) 916-4456
andrewperdigon@outlook.com



his inner most secrets and desires with the intention of causing humiliation, causing undue emotional distress, and inducing fear/insecurity, even from feedback of trained behaviors that were induced using the telepathic channel, and pushing away any prospective new relationships. Ultimately, the tactics employed have been identified as mirroring that of clandestine operations and Department of Defense methods of persuasion, sharing the common goal of misdirecting the Plaintiff throughout his efforts and relieve him of his agency, in order to defraud him by claiming ownership of his intellectual property and life rights, being of significant worth, using "no touch" methods to prevent the appearance of any intervention at all, to designate him a slave seemingly of is own volition, to carry out the vast deprivation of his rights, and to render him subservient to the Circle of estranged family and former friends who would sexually satisfy themselves while watching him, per their own admission.

36.    **CAUSES OF ACTION**: Elaborate productions have been created throughout the Plaintiff's adult life, perhaps earlier, involving the individuals he had established relationships with who would end up being used to steer his life along a predetermined path, suspected to be for the purpose of curating certain types of responses and biological data without him being aware. This means there have been periods of happiness, sadness, fear, pain & suffering, and love, that were each masterminded and calculated - these have not been experienced in equal proportions from his perspective, especially now after years of suffering under assault. Forcing control over the Plaintiff's destiny through the control of his environment, supplemented with the other measures described herein to generate outcomes that were not in his best interest, instead they to benefit from his demise, with is evidence of the longstanding nature of the criminal enterprise. The Plaintiff has felt a sense an emptiness, pain and suffering in knowing that his life has been fabricated and that despite denials or claims to the contrary, he has not been afforded the opportunity to live free, rather, encouragement to die hard once no longer useful to those conspiring against him.

37.    By hijacking his environment and circumstances, effectively forcing bias on where the Plaintiff would end up in life, it's no mystery that the position he currently finds himself has been the intent of a sizable conspiracy which has treated the Plaintiff in a manner less than a free person should be. He has unknowingly been subjected to forced labor, subjected to false dealings that were tied to others' sabotage such as his inability to find work after departing his previous employer, been trafficked by individuals who would surveille him and gamble with cryptocurrencies for transactions, and there has been peddling of indecent imagery stolen from his devices. Each of these are flagrant violations of federal R.I.C.O. and state O.C.C.A. statutes which the defendants are implicated in.

Andrew Perdigon | (917) 916-4456
andrewperdigon@outlook.com



38.     Under New York State and New York City laws, there exist rights and protections specifically guaranteed to their citizens, reflecting the wishes of a more progressive subsection of society. There have been flagrant violations of those laws and protections, leading to a litany of unlawful acts enabled by State of New York and City of New York agents, and committed by Gotham Organization Inc. and affiliated limited liability companies 44th Street Development LLC and Gotham West Affordable LLC, whose officers and agents have been involved in coordinated malicious conduct. They are part of a broad criminal enterprise to defraud the Plaintiff and deprive him of his rights, by publicly defaming him amongst the community, by casting the Plaintiff in a false light to other tenants, by participating in housing discrimination and retaliation for failing to provide adequate services, by failing to address issues regarding the security of the Plaintiff's home, even while sleeping, and breaching a warranty of habitability, both per his tenant rights, for the use of installed radiological dispersal devices/objects to inflict physical, psychological, and long-term neurological damage to the Plaintiff, in acts of prejudice, intolerance, bigotry, discrimination, sexual harassment and bias-related violence and harassment against the Plaintiff given his creed, a perceived disability, and his status as a victim of stalking and domestic violence, through intense stalking measures using Landlord resources such as building surveillance equipment, concealed audio equipment inside the Plaintiff's home, and through gross violations of his privacy. In coordinating with police officers and other agents of the conspiracy, the Owners/Landlords, and their agents, have enabled illegal searches and seizures of the Plaintiff's person and property, physical and psychological torture with the conceals objects referenced above (see the Circle, defined herein), unprecedented violations of his freedom of thought given control exercises calculated to disrupt profoundly the senses or personality and violations of his mind, and other crimes by allowing unknown individuals enter the Plaintiff's home without proper authorization or notice.

39.     The application thought to be used by these agents to hack his mobile phone and other Apple devices, Pegasus, would be the same that Apple sued NSO Group for in 2021 for $10.00 million dollars, to curb the abuse of state-sponsored spyware. Apple acting in concert with the defendants in the use of spyware that undermines device, application, and iCloud security features, or that Apple potentially permits passageway through these defenses, has created intentional torts. More recently and not by coincidence, agents belonging to the Circle of those with access to spyware have significantly increased their obstructive activities leading up to the Plaintiff filing court challenges. Prior to this, Pegasus has been used for its extensive data-collection capabilities — it can read texts and emails, monitor app usage, track location data, and access a device's microphone and camera even when not in use, as well as access apps

Andrew Perdigon | (917) 916-4456
andrewperdigon@outlook.com


and manipulate data, even in non-Apple products. The Plaintiff believes that this type of subversion of their own protocols goes back to when the Plaintiff first realized telepathic episodes in 2008, and that Apple has been involved his effective enslavement given economic profits made from his efforts since then, hence the many allegations herein.

40.    Whether viewed as a collection or in their own right, the Plaintiff's telepathically transmitted biological data, and other strictly personal works ("Data and Works") are sufficiently creative and/or form an original arrangement or selection of data which are protected individually or together, as source code, or as a literary work once received. Instead, they are being treated as a natural resource, fair use, or parody, and kept from the Plaintiff through extraordinary measures, setting a dangerous precedent for any content traveling via radiofrequencies.

41.    Ultimately, the back and forth of Data and Works and communications is achieved via RF, whether using brainwaves, Wi-Fi, or another method of connecting, and they are being captured post-broadcast and used even while the source, being the Plaintiff, is known.  The grasp the Plaintiff has on this subject is through his own observations and research, however he is clear that there is technology picking up his brainwaves and the practice has been ongoing for many years, as admitted by an agent of the defendants. The Plaintiff has been able to capture his own thoughts/internal dialogue being played/emitted from a speaker. Using an iPhone microphone, the Plaintiff recorded faint audio from within his apartment walls where it was coming from. What he tested and captured was his own internal dialogue being echoed back, along with the voice streams of the Circle of individuals. He thought a of a phrase, with a high pitch, and repeated it several times to create a rhythm that could be sensed more easily when played back. This proved beyond any doubt his brain's activity was interfacing with technology, and that more advanced technology exist because of him. During the at home trial, phrases of those operating the speakers and technology revealed some pointed and objectifying language, such as:

"You're so fucking dead inside."

"All you have to do is have to do [to end the torment] is have sex [while being observed]."

The defendants, which possesses, have provided, or are familiar with the technology to receive the Plaintiff's thoughts are known to have been involved with agents of the defendants, including the Circle of close contacts, casting a false light in order to push the Plaintiff to end his own life, which was attempted in 2021, and to smear his name or identity through infringing publication of his Data and Works in ways

Andrew Perdigon | (917) 916-4456
andrewperdigon@outlook.com



other than how he would have handled his products, including those of his image or likeness.

42.     There are also the matters of licensing, patented derivative works created by other parties, content creation, etcetera, domestically and internationally, which have driven economic activity who are well aware of their infringement, that came at a human cost which has never been acknowledged or compensated for; the possibility for monetary damages from parties, including the defendants is staggering, however the Plaintiff the list of defendants focuses on those which are directly tied to the criminal enterprise and that are believed to have had the largest parts in the operation, governments and their officials which may have benefited in some way and which had a responsibility to intercede with a position or platform to provide help, who ignored many outreaches seeking help in recent years.

43.     Devices and applications existing in 2023, will have been developed in pursuit of capabilities mimicking the telepathy of the Plaintiff because there will have already existed revolutionary human biological data available to use as the groundwork. For instance, the applications that will support BCI which will communicate with brain implants, or the operating system for a car with autonomous driving, which have been brought to market already trained and tested using the Plaintiff's intellectual property. There is a massive gap in the Plaintiff's rights being honored and human dignity shown compared to other people, not benefiting from the priveledge others around him would receive, even while he was contributing to a society in outsized ways which he also has come to be proud of, proving there's been rampant defrauding of the Plaintiff, unequal treatment, discrimination, and ongoing denials of his right to property.

44.     In the second half of 2022, officers of the New York City Police Dept, "NYPD," used excessive force and made explicit statements mandating the Plaintiff's consent when demanding they enter his apartment, and demonstrated blatant illegal conduct especially by taking part in the degradation of the Plaintiff while acting as though they were acting in his best interest. A stark deprivation is now taking place after three (3) occasions when NYPD wellness checks turned into SWAT breaking in of the apartment door with riffles drawn; the Plaintiff feared for his life on each of these occasions. Furthermore, Plaintiff has made many attempts to engage NYPD officers and detectives for help to preempt further incursions which have been unsuccessful, if not detrimental, given the furtherance of malicious acts of conspiring agents against the Plaintiff. Libel and slander followed each of these instances, leaving behind a smeared reputation that paints the Plaintiff in a false light, used for subsequent detentions against his will by hospital workers. On one such occasion the Plaintiff was restrained which calm by five (5) security

16     510 West 45th Street, apt 10G
         New York, NY 10036

Andrew Perdigon | (917) 916-4456
andrewperdigon@outlook.com



guards while a doctor sedated him and proceeded to transfer to another facility, filing false paperwork in between.

45.     The Department of Buildings ("D.O.B."), part of N.Y.C.'s mayoral organization, failed to properly report and issue citations for issues raised during an inspection which took place on January 5, 2023. Hazardous conditions experienced within the Plaintiff's apartment started when he moved in during 2018, which become detrimental to his health and the health of his dog in 2021-2023. An electromagnetic field (EMF) meter proved the existence of extremely high levels of radiation, the source being intentionally installed building materials which were energized via an electrical connection. An audio recording captured the D.O.B. in a lie, flatly denying conditions which still exist and cementing a deep seeded corruption within the City of New York's agencies, departments, and offices.

    A.  Conditions up to seven (7) times the maximum threshold and twenty-three (23) times what's present in the common areas of the Premises have been seen. Levels reached about ten (10) times what was seen in the hallway that day.

    B.  Plaintiff has equated these conditions to being tortured when considering the prepense, given objects are suspected to have been installed prior to moving in and occurring in parallel with deprecating telepathic messages that have been received.

46.     Officers from the Office of the Sheriff of the City of New York on September 8, 2022, took the Plaintiff into custody with a warrant from the New York County Supreme Court. The warrant itself, was not properly served and the hearing he was brought to resulted in the Plaintiff being hospitalized against his will, yet again. The hearing was an abuse of process, sought by estranged family members known who are listed as defendants, who falsely claimed he was of diminished capacity in the court hearing where the outcome was thought to be already known to the attendees, save the Plaintiff. There had also been the issue of false testimony being given on the part of Orlando Perdigon, the Plaintiff's father, that has still not been challenged given the court record was sealed.

    A.  This was one of eight (8) illegitimate and instigated hospitalizations by co-conspirators, this one which lasted five (5) days in involuntary care. The Plaintiff was released on appeal at the first opportunity by a judge.

    B.  The bill for the hospitalization came out to $18,000, the largest over the course of the eight visits being $100,000, leading the Plaintiff to believe that insurance claims fraud was also a component of the criminal scheme.

Andrew Perdigon | (917) 916-4456
andrewperdigon@outlook.com



47.     There have been targeted attacks by the defendants, co-conspirators and/or agents, inclusive of the Circle, who have been shielded from identification who the plaintiff would like to see held accountable finally for their daily criminal conduct which has placed the Plaintiff in a progressively worse situation, as well as by using sophisticated technologies they operate. In addition to the requesting an injunction of the use of telepathic devices and technologies until they can be impounded and transferred to him, restraining orders against members of the Circle. Plaintiff seeks the prosecution of individuals found to be part of the conspiracy as the court sees fit, and applying sanctions and measures, as well as coercing the defendants, if necessary, to share comprehensive information regarding the Plaintiff's past, his ability as a telepath, information that fills in any gaps in his knowledge and/or corrects statements made, which have been upon information and belief, information regarding accounts that belong to the Plaintiff, including but not limited to those containing monies from the exploitation of the Plaintiff, his Data and Works, and/or images of him and any of his likeness.

48.     Declaratory relief whereby the Plaintiff's brain, given new light on its exceptional capabilities might, for the purpose of capturing criminal activity using existing laws, be considered a biological computer capable of the attributes of a computer, and as copyright law would deem any collections or derivatives of this data an extension of him, patenting and licensing of his data are acts of infringement as well as fraud. The sum these acts would result in torts and personal injury claims against the benefactors of the Plaintiffs Data and Works; more information might be needed to determine causes of action beyond those.

49.     Elements of claims by the Plaintiff for activities against him and proving the existence and malfeasance of a criminal enterprise, which is bombarding him with illegal and suppressive activities, and also substantiating the Plaintiff's claims to having an exceptionally ability and unclaimed wealth, both which the defendants seek control of:

    A.   Civil rights violations by local, state, and federal governments' employees and officials, including but not limited to violations of the Plaintiff's freedoms, of thought, of expression, of belief, from discrimination, from oppression, from cruel and unusual treatment/punishment, and his right to due process,

    B.   Committing or conspiring to commit crimes, including fraud, deprivation of intellectual property rights, appropriation of personality rights, deprivation of privacy rights, including

Andrew Perdigon | (917) 916-4456
andrewperdigon@outlook.com



but not limited to the right of publicity, the right to an expectation of privacy, and the rights to personal autonomy as well as a zone of privacy, which government via negligence and/or intention in facilitating intrusions into his home and into his mind, has forced the Plaintiff to surrender to his detriment, purporting that some other interest takes precedence, counter to case law established by the Supreme court,

C.   False imprisonment within the Plaintiff's home given the degree to which harassment and other coordinated pressure from R.I.C.O. and O.C.C.A. agents/co-conspirators. There is also a clear abuse of process by Owners/Landlords, by seeking to displace the Plaintiff from his home after predatory harassment which caused undue emotional distress, pain and suffering, and showing cause to bring the matter to federal court where proceedings in view of all facts and parties can be seen holistically as a machine designed to break the Plaintiff. Employees and those of 44th Street Development LLC and Gotham West Affordable LLC, and considering malicious activities of these limited liability corporation and Gotham Organization LLC, the Plaintiff moves the Court to hold their officers accountable, to pierce the corporate given the influence and/or involvement of the humans in conducting illegal acts,

D.   The failure of local, state, and federal governments, and their employees and officials to intercede on the Plaintiff's behalf while tortured by individuals acting as agents/co-conspirators, while having the platform to do so,

E.   Abuses by government officials and agents, as well as citizens, by permitting the violation of laws without consequence when committed against the Plaintiff, realized to have subversively taken place prior to 2022, which later became overt once he realized the truth of his telepathy, and upon learning that his biological data was being publicized without consent. Data and Works on one hand were used to ridicule the Plaintiff, depriving him of rights and freedoms, while also brandishing him as "usable" for public defamation, identity theft fraud and impersonation, and generally for the personal gain of others,

F.   Being covertly or overtly, depending on whose perspective it was being viewed from, subjected to human experimentation and torture, including but not limited to physically and psychologically, by inducing electromagnetic radiation punitively, using command and control procedures calculated to disrupt profoundly the senses or personality, and medical experimentation, such as the mutilation of the Plaintiff's body,

510 West 45th Street, apt 10G
New York, NY 10036

Andrew Perdigon | (917) 916-4456
andrewperdigon@outlook.com



G. Past misuse of the Plaintiff's Data and Works, including but not limited to illegally captured imagery, audio/sound streams, data streams, digital footprint, and other broadcasts inclusive of his browsing history, advertisement time, and other user data, to build a repository, database, and other technologies, including the development and training of artificial intelligence ("A.I."), including but not limited to computer source code and applications for natural language processing, human-like automation, Artificial General Intelligence (a.k.a. Strong A.I.), which are considered a crown jewel of A.I., and brain-to-computer interface technologies and programs,

H. Hacking of the Plaintiff's electronic devices and his psyche without consent, in part for the purpose of generating content used to generate economic activity and profits, to further technology and scientific research, advertise, to prolong his years of suffering, and to, as stated by the governments' agents specifically through incoming neural/telepathic communication channel, destroy the life he had built throughout the first nearly 40 years of his life,

I. Use of the Plaintiff's image or likeness as entertainment for an audience of unknown size, via the internet and other communication and social media services, which is expected to include millions of people, domestically and internationally, without his knowing where to find such content, thus controlling the public perception of him in violation of his right to publicity, as well as his life in a way that he would not have chosen to project publicly, influenced instead by the selfishness, greed, and sadistic pleasures, among other moral failings, of those in his life who have put him through a personal hell,

J. Being subjected to a cycle of behaviors to also satisfy the price movements and cycle of Bitcoin, the cryptocurrency, in order to simulate a free-market commodity, a form of gambling and a racketeering offense, and believed to be used by the U.S. to gain geopolitical control over nations adopting the cryptocurrency.

50.     **DISCOVERY**:  The Plaintiff is seeking discovery of the following information from the defendants, which are regarding his own circumstances that the defendants, and their agents, officials, officers, and employees, have knowledge of and which they have withheld from him in order to prolong his suffering and to maintain control over his life and intellectual property. This information is needed to further build upon the facts of this case given a shroud of secrecy that the Plaintiff believes to have started when he was a child, and distinguishing information about him was discovered. Information pertaining to:

Andrew Perdigon | (917) 916-4456
andrewperdigon@outlook.com



A. History and lineage, and the way in which Plaintiff was discovered to be a telepath,

B. The means and methods by which Plaintiff's Data and Works are collected, recorded, persisted, sorted, and stored,

C. The governments' plans would-be plans for the Plaintiff, including desired outcomes and reasons for keeping his ability a secret from him,

D. The impact this manipulation has had on personally significant events throughout the Plaintiff's life,

E. The means by and extent to which private citizen and public officers and officials are kept apprised of the Plaintiff's circumstances, and how this has been accomplished over the duration of the augmented reality/simulation in which he lives,

F. Research on how the Plaintiff's mind is known or thought to influence an environment, other people, and/or machines, energy, and technologies,

G. Information on how the Plaintiff's Data and his life story have influenced and/or been used in media, commerce, manufacturing, geopolitics, technology, science, public policy decisions, including the methods by which his data has been traded, sold, destroyed, or otherwise disposed of,

H. The creation of laws to accommodate the augmented reality/simulation the Plaintiff is allegedly living in, where even state governments and state courts have bent in their conduct to the satisfy a narrative,

I. Research on the impact the Plaintiff has had on industries, segments, initiatives, projects, programs, or other endeavors not mentioned herein.

51.     **MONETARY RELIEF:**  The Plaintiff's Data and original Works, including but not limited to the content of his personal journals, his biological data, formulated streams of thought, and internal dialogue, have been and will undoubtedly continue to be prolific, providing unique insight into the human mind and body through a multitude of applications. In the process of achieving viable A.G.I. and various forms of differentiated A.I., it will serve to transform world economies, including labor markets, sustainable energy in the fight against climate change and spur exponentially more advanced technologies. Ahead of this shift and in light of copyright infringement lasting over three (3) decades, the Plaintiff is seeking, he is seeking monetary relief from the each of the individual defendants in the amount of $1 trillion USD, however the amount is subject to change upon there being additional information. The

Andrew Perdigon | (917) 916-4456
andrewperdigon@outlook.com



A.I. field is expected to bring an estimated value add to global GDP of around $16.00 trillion USD[2] in just seven (7) years; $13 trillion[3] per conservative estimates.  The portion to which the Plaintiff and his Data and Works have contributed must be considered in fairly evaluating that which he is owed. With more information, one might find that this analysis has already been performed.

52.     The Plaintiff is seeking compensatory damages and other forms of equitable for the remaining causes of action and across the defendants are still under consideration by the Plaintiff, and more information is needed to properly apportion torts and assess the full set of claims of action given there has not been an investigation by law-enforcement.

53.     Regarding Apple Inc., the Plaintiff sees their actions are reprehensible which are taken personally as a long-time customer. Poaching intellectual property and other content from the Plaintiff, using a global content distribution framework and assumptions that intentionally kept the Plaintiff in the dark and ignored the human, are now seen as intentional torts and fraud committed by a powerful corporation that treated his brain as a biological computer capable of being hacked, used to persist trends and/or lay claim to his ability and his influence to sail into profits. The Plaintiff again sees an opportunity to apply existing laws, where racketeering includes fraud and related activities in connection with access devices, pursuant to 18 U.S.C. §1029. The amount sought by the Plaintiff in monetary damages is undetermined pending discovery, though will also consider the following product torts created:

   A.   iPhone and iOS operating system, Lockdown mode, iCloud services as a product, MacBook Air and Mac OSX operating system as two (2) separate products,

   B.   Apple App Store as a separate product, which was sandbox environment, thus preventing the Plaintiff potentially from the service or app being used to violate his privacy,

   C.   Apple's specific awareness of and negligence in regard to the use of sophisticated spyware on the Plaintiff's devices, such as "Pegasus" and "Xprotect",

      a.   Taking part in the initiative to build a database of his personal data, to develop and train technologies, beyond what is typically captured from users,

---

[2] Anand Rao, Gerard Verweij, Euan Cameron, "What's the real value of AI for your business and how can you capitalise?", PWC Data, Analytics and AI, Wed, March 1, 2023, 9:37 pm ET, <www.pwc.com/AI>
[3] Jacques Bughin, Jeongmin Seong, James Manyika, Michael Chui, Raoul Joshi, "Notes From the AI Frontier Modeling the Impact of AI on the World Economy," McKinsey Global Institute, Wed, March 1, 2023, 9:37 pm ET, < www.mckinsey.com/mgi>

 510 West 45th Street, apt 10G
New York, NY 10036

Andrew Perdigon | (917) 916-4456
andrewperdigon@outlook.com



      b.   Persisting Plaintiff's data via Apple's CDN and generating content inordinately proportioned when compared to standard collection practices from other users,

D.   Apple's awareness and use of Plaintiff's status as a telepath, evident by the degree in which the firm has targeted him for content ideation,

E.   For the failure to remedy known issues over the years of outreach for support, failure to act upon shared analytics data for Apple products and third-party app data.

F.   For knowingly participating in "hackathons" that targeted the Plaintiff, resulting in long lasting vulnerabilities, causing undue emotional damage and depression, and anxiety while seeking to correct these issues on his own. These events allowed the private content of the Plaintiff to be persisted, denying him his dignity, Data, Works, intimate photos, videos, and messages.

54.    **CERTIFICATION AND CLOSING:**  Under Federal Rule of Civil Procedure 11, by signing below, I certify to the best of my knowledge, information, and belief that this complaint: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Rule 11.

55.    I agree to provide the Clerk's Office with any changes to my address where case-related papers may be served. I understand that my failure to keep a current address on file with the Clerk's Office may result in the dismissal of my case.

_____

Signed by Andrew Perdigon
Tuesday, February 28, 2023

23    510 West 45th Street, apt 10G
New York, NY 10036

Andrew Perdigon | (917) 916-4456
andrewperdigon@outlook.com

